IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,                          Cr. No. S-09-485 KJM

    vs.

KENNETH FRANKLIN BEALS,

        Defendant.                <u>ORDER</u>

_____/

        Defendant Beals is charged by indictment with being a felon in possession of a firearm. Defendant has moved to dismiss the indictment based on outrageous government conduct, and has requested an evidentiary hearing in connection with the motion. This case was on calendar most recently on March 28, 2012, for a status hearing, at which Robert M. Holley appeared for defendant Kenneth Beals, who was present in custody in court; William Wong, Assistant United States Attorney, appeared for the government. The court noted at the hearing that it would issue an order in the near future resolving the motion to dismiss. That order follows. For the reasons addressed below, and after careful consideration, the court denies defendant's motion and request for an evidentiary hearing.

/////

/////

I. Background

Defendant is charged with one count of possession of a firearm by an ex-felon, in violation of 18 U.S.C. § 922(g)(1). ECF No. 1. On February 3, 2011, defendant filed a motion to suppress the gun, which was seized during a search of his Dodge van. He relied on the description of the October 19, 2009 incident contained in a police report prepared by Sacramento Police Officer Harshbarger and argued that Harshbarger and the other arresting officer did not have reasonable suspicion to approach the van, which was parked in front of a liquor store, much less probable cause to conduct a warrantless search. ECF No. 13. In the report, Officer Harshbarger said that he approached the van because he knew "this model of Caravan is commonly stolen," and that when defendant said he was on probation and the passenger said he was on parole, Harshbarger and his partner ordered the van's occupants detained. ECF No. 13-1 at 1. A warrants check showed active Lake County warrants for defendant. *Id*. The officers searched the van and found a gun in the area where defendant had been sitting. *Id*.

The government submitted Officer Harshbarger's declaration as part of its opposition to the motion to suppress. Officer Harshbarger averred that on October 19, 2009, he was looking for this particular 1994 Dodge Caravan because he "had been given information from a confidential informant that Kenneth Beals was a convicted felon and was possibly armed with a handgun" and was driving such a van. ECF No. 19-1 at 2 ¶ 4. Harshbarger had followed up after his contact with the informant by requesting defendant's criminal history and driving record from dispatch; approximately two hours after submitting the request, Harshbarger received information that defendant's driver's license was suspended, that he was wanted on the two outstanding warrants from Lake County, and that defendant was on probation. *Id*. ¶ 6. About a half hour after receiving this information, Harshbarger found the van parked in front of a liquor store. *Id*. at 3 ¶ 7. Harshbarger recognized defendant from a prior contact and ordered him out of the van. *Id*. ¶ 10. He averred that "in order to maintain the confidentiality of the identity of my informant, I used a ruse to explain my presence at the scene." *Id*. ¶ 11. During

the encounter, Jennifer Critchfield, who had been a passenger in the van, came out of the liquor store. She was detained but then released. At defendant's request, Harshbarger gave Critchfield defendant's keys and she was allowed to drive the van away so it would not be impounded. *Id*. ¶ 14. Defendant later acknowledged that the gun the officers found was his. *Id*. ¶ 16. Harshbarger concluded his declaration by saying, "I omitted from my report any mention of the fact that I had received information from a confidential informant . . .. because I wanted to protect the identity of the confidential informant for the informant's safety." *Id*. at 4-5 ¶ 17.

On June 6, 2011, defendant suspended litigation of his motion to suppress and filed a motion to dismiss for outrageous government conduct and a motion for disclosure of the informant's identity and several categories of information about the informant. In the briefing on the motion to disclose and in the motion to dismiss, defendant asserts, without evidentiary support, that the officers told him the van, which belonged to his uncle, could be impounded for his uncle to retrieve later or that "maybe the woman passenger could drive it back to the uncle's house for him." ECF No. 31 at 7; ECF No. 30 at 9. Defendant continues, that "Ms. Critchfield, the uncle's van, and thousands of dollars of personal property taken from the uncle's residence, disappeared that night, never to return." ECF No. 31 at 7; ECF No. 30 at 9. In his motions, defendant theorizes that Critchfield, who had been texting shortly before the arrest, was the informant and that had he known, he would not have authorized giving his uncle's keys to her. ECF No. 31 at 7; ECF No. 30 at 9.

In considering defendant's motions to disclose and to dismiss, the court conducted an *in camera* examination of Officer Harshbarger, later releasing the transcript to the parties. During the examination, Harshbarger identified Critchfield as the informant, said he was aware she was on probation for non-violent offenses, and explained that she had been exchanging money for information for approximately three years. ECF No. 52 at 4-5. The officer said he had heard that Critchfield was currently in prison. *Id*. at 21.

/////

Harshbarger testified that after arresting defendant, he tried to reach defendant's uncle, the registered owner of the van, but when he could not, he followed usual police practice by giving defendant the option of having a responsible party take the van rather than having it towed and impounded; defendant opted to have Critchfield take the van. *Id*. at 12, 14-15. Harshbarger did not look at the key ring he gave Critchfield, and did not realize there was a house key on the ring. *Id*. at 12-13. Defendant did not volunteer that the ring contained a house key. *Id*.

In preparing for the court's *in camera* examination, Officer Harshbarger learned that there were no reported crimes from the uncle's address, from the date of defendant's arrest until a month or two before the examination. *Id*. at 16.

Officer Harshbarger did not tell the U.S. Attorney's Office about the existence of the informant until three months before the *in camera* hearing, nearly two years after the grand jury indicted defendant. Harshbarger testified he was acting to protect the informant. *Id*. at 16. His desire to protect Critchfield's identity also prompted him to omit any mention of her from the police report and to claim instead as a "ruse" that he approached the van because it was a commonly stolen model and was improperly parked. *Id*. at 18.

After the *in camera* hearing and the court's release of the transcript, defendant filed a supplemental memorandum of points and authorities, which attached an investigator's report of an interview with one Adam Susko, an inmate at Deuel Vocational Center. Susko identified a picture of Critchfield as someone who was "kind of like family" to him "when he was out on the streets." ECF No. 46-1 at 1. Sometime in October 2009, Susko called Critchfield for a ride. She reportedly arrived in a white van, drove him to a house on Greenholm Street and asked for Susko's assistance in "robbing the house," but he refused. *Id*. at 2. Despite having obtained this report, defendant has never submitted a declaration from Susko, or defendant's uncle, or a police report or insurance claim or any other documentary evidence supporting his contention that the uncle's house was burglarized after Harshbarger gave Critchfield defendant's

4

keys. Nor has defendant suggested that Susko would be willing to testify about this incident, or offered to make Susko available for examination.

Upon review of defendant's supplemental memorandum, the court ordered the government to provide a transcript of the grand jury proceedings related to defendant's indictment. After *in camera* review, the court released this transcript to defendant. That transcript of the proceeding, held on November 12, 2009, shows that the case was presented through the testimony of an agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives. The agent based her testimony on a review of the police reports and responded affirmatively when the Assistant United States Attorney asked, "did the officers indicate that they had observed Mr. Beals commit some type of parking violation?" ECF No. 54 at 3.

In his most recent supplemental memorandum of points and authorities, defendant argues that Officer Harshbarger's actions in allowing defendant to authorize giving his keys to Critchfield, who was the cause of defendant's arrest, coupled with the officer's falsification of his police report, tainted the grand jury proceedings. ECF 59 at 2:18-20, 3:1-3.[1]

II. Analysis

Defendant argues he is entitled to dismissal of the indictment because Officer Harshbarger allowed or perhaps encouraged defendant to give his uncle's keys to Critchfield, the officer falsified the police report and did not reveal his ruse to the U.S. Attorney's Office until the defense filed its suppression motion, and also because the essence of the false police report was presented to the grand jury. Defendant argues the court may dismiss on due process grounds or under its supervisory authority. While defendant notes that there is no authority directly on point to support his position, he argues that the lack of authority is unsurprising given the nature of his motion as raising a question of first impression.

/////

---

[1] Defendant also references for the first time "physical abuse of the defendant during the arrest," without providing any evidentiary support for this allegation. ECF 59 at 2:21-22.

5

As a threshold matter, the court does not condone Officer Harshbarger's actions, beginning with his provision of defendant's keys to the informant, to falsifying the police report and then failing to reveal his deception to the U.S. Attorney's Office until defendant filed his motion to suppress. The court is particularly troubled by the false report which, as defendant argues, both the public and a criminal defendant should be able to accept at face value. As untoward as Officer Harshbarger's actions were, the court finds they do not warrant dismissal of the indictment. Given its concerns about the officer's actions, however, the court will direct that a copy of this order be served on the head of his employing agency, for consideration of any actions that agency may deem appropriate.

A. Due Process

In order to show outrageous government conduct, which violates the due process clause, defendant must show conduct that is "'grossly shocking and so outrageous as to violate the universal sense of justice.'" *United States v. Stinson*, 647 F.3d 1196, 1209 (9th Cir. 2011) (quoting *United States v. Restrepo*, 930 F.2d 705, 712 (9th Cir. 1991)), *cert. denied,* __ U.S. __, 2012 WL 425232 (Mar. 19, 2012). In *Stinson*, for example, the Court of Appeals upheld the district court's refusal to dismiss an indictment based on the fact that a government witness with a history of perjuring himself, including perjury in a related case, received government payments for his testimony. In *United States v. Childs*, 447 F.3d 541 (7th Cir. 2006), the Seventh Circuit Court of Appeals refused to dismiss an indictment even though it characterized the prosecutor's conduct as "designed deliberately to mislead the court and defendant counsel" about two informants' theft of some of the drug evidence they had purchased from defendant. *Id*. at 545. The Court of Appeals said that defense counsel was able to make use of the information once it was revealed to him and so dismissing the indictment in the absence of prejudice "would be to confer an unearned windfall." *Id*. In this case, similarly, defendant is aware of Officer Harshbarger's deception in time to make use of it if the case goes to trial. There is no evidence

/////

6

that Harshbarger's deception directly tainted the prosecutor's eliciting of testimony before the grand jury to obtain the indictment of defendant; the evidence rather is to the contrary.

The suggestion that Critchfield burglarized defendant's uncle's home, if true, is similarly disturbing, but it does not rise to the level of a due process violation. First, Officer Harshbarger testified he did not pay attention to the keys on the ring: his carelessness or inattention does not violate due process. Second, and most significantly, the wrong Harshbarger allegedly facilitated was not aimed at defendant, but rather at his uncle: the uncle's house was burglarized and the uncle's property taken. In *United States v. Edmonds*, 103 F.3d 822 (9th Cir. 1996), the Ninth Circuit observed that even if the affidavit in support of a search warrant of another's home was based on a number of falsehoods, the defendant was not entitled to a dismissal of the indictment because "[t]he rights affected by the search of [the other person's] home were not those of [defendant,]" and so the defendant failed to "establish a link between the improperly executed search warrant and the deprivation of his own due process rights." *Id*. at 825-26; *see also United States v. Payner*, 447 U.S. 727 (1980) (cannot suppress evidence under supervisory powers when authorities' illegality was directed at a third party).

B. Supervisory Authority

Defendant asks the court to dismiss the indictment in an exercise of its supervisory authority. The court may exercise this power "'to remedy a constitutional or statutory violation; to protect judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the jury; or to deter future illegal conduct.'" *Stinson*, 647 F.3d at 1210 (quoting *United States v. Barrera-Moreno*, 951 F.2d 1089, 1091 (9th Cir. 1991)). In this case, Officer Harshbarger's actions do not go to defendant's guilt or innocence, which counsels against dismissal. *See United States v. Williams*, 978 F.2d 1133, 1135 (9th Cir. 1992) (upholding district court's refusal to dismiss even though grand jury heard perjured testimony, because the perjured testimony was not material to guilt or innocence). Although Officer Harshbarger did perpetuate a lie in his police report, his falsehoods and omissions did not relate

to defendant's guilt of the charges. In addition, although the officer's release of the keys to Critchfield represented extremely poor judgment, this court cannot say that poor judgment has had an impact on the case before this court or on any evidence relating to defendant's guilt or innocence.

IT IS THEREFORE ORDERED that:

1. The motion to dismiss for outrageous government conduct (ECF No. 31) is denied. Defendant's request for an evidentiary hearing in connection with the motion to dismiss also is denied.
2. The Clerk of the Court is directed to serve a courtesy copy of this order on the Chief of Police of the Sacramento Police Department, City of Sacramento.
3. At the status hearing set for April 11, 2012, the parties shall be prepared to discuss the status of defendant's pending motion to suppress and additional briefing with respect to that motion.

DATED: April 9, 2012.

_____
UNITED STATES DISTRICT JUDGE